**BT INVESTMENT MANAGERS, INC., and Bankers Trust New York Corporation, Plaintiffs,**

v.

**Fred O. DICKINSON, Jr., Comptroller of the State of Florida, etc., Defendant.**

Civ. A. No. 73–184.

United States District Court, N. D. Florida, Tallahassee Division.

July 29, 1974.

John E. Mathews, Jr., Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, Fla., for plaintiffs.

Larry E. Levy, Gen. Counsel, Tallahassee, Fla., for defendant comptroller.

J. Thomas Cardwell, Akerman, Senterfitt, Eidson & Wharton, Orlando, Fla., for amicus curiae, Florida Bankers Association.

Before RONEY, Circuit Judge, ARNOW, Chief District Judge, and MIDDLEBROOKS, District Judge.

## OPINION–ORDER

MIDDLEBROOKS, District Judge.

In this action plaintiffs seek declaratory and injunctive relief from the operation of Florida Statutes, Sections 659.141 and 660.10 and seek a declaration that the statutes attacked are unconstitutional on the face of the statutes.

Jurisdiction is founded on Title 28, U.S.C.A., Sections 1331 and 1343(3). Three-Judge District Court action was requested as required under Title 28, U.S.C.A., Section 2281 et seq.

The challenged statutes provide:

"659.141 Control; ownership

(1) Except as provided in subsection (3) of this section, no bank, trust company, or holding company, the operations of which are principally conducted outside this state, shall acquire, retain, or own, directly or indirectly, all or substantially all the assets of, or control over, any bank or trust company having a place of business in this state where the business of banking or trust business or functions are conducted, or acquire, retain, or own all or substantially all of the assets of, or control over, any business organization having a place of business in this state where or from which it furnishes investment advisory services in this state. However, if a bank, trust company, or holding company directly or indirectly owning all or substantially all the assets of, or having control over, a bank or a trust company or business organization to which the restrictions and prohibitions of this section apply, having acquired such assets or control prior to becoming disqualified hereunder, shall, on or after the effective date of this section, be or become disqualified hereunder to acquire, retain, or own the same, the restrictions and prohibitions of this section shall not be enforced against it for a period which, under all the circumstances, is determined by the department to be reasonable, not exceeding two years from the effective date of this act or from the date it becomes disqualified hereunder, whichever is later, unless said period of two years is extended by the department as herein provided. The department is authorized, upon a showing of undue hardship, to extend said period of two years from time to time if it determines that any such extension would not be detrimental to the public interest, but any such extension shall not exceed one year and all thereof shall not in the aggregate exceed three years."

"660.10 Trust powers and duties

All corporations except banks and trust companies incorporated under the laws of this state and having trust powers and except national banking associations located in this state and having trust powers, are prohibited from exercising any of the powers or duties and from acting in any of the capacities, within this state, as follows:

(1) As executor or administrator of the estate of any decedent, whether such decedent was a resident of this state or not, and whether the administration of the estate of such decedent be original or ancillary; provided, that if the executor or administrator of the estate of a nonresident decedent be a corporation duly authorized, qualified and acting as such executor or administrator in the jurisdiction of the domicile of the decedent, it may, as a foreign executor or administrator perform such duties and exercise such powers and privileges as are required, authorized or permitted by § 734.30.

(2) As guardian of any infant, insane person or person physically or mentally incompetent whether domiciled in this state or not.

(3) As trustee under any will or other testamentary instrument, provided any corporation that is authorized to act as trustee under the laws of the place where it has its principal place of business may receive bequests as trustee of money or intangible per-

sonal property and devises of real property located in Florida and may sell, transfer and convey the property.

(4) As trustee of any real estate in this state or any interest therein under any agreement whereby the beneficial interest in such property is vested in others.

(5) As trustee under any deed of trust or other instrument executed after June 10, 1937, conveying or encumbering any real or tangible personal property in this state given to secure bonds or other evidence of indebtedness unless in such deed of trust or other instrument a trust company or bank having trust powers and located in this state or an individual residing in this state shall be named as cotrustee; and no suit shall be brought to foreclose any such deed of trust or other instrument unless such cotrustee or successor cotrustees of like qualifications be a party plaintiff.

(6) As receiver or trustee under appointment of any court in this state.

(7) As assignee, receiver or trustee of any insolvent person or corporation or under any assignment for the benefit of creditors.

(8) As fiscal agent, transfer agent or registrar of any municipal or private corporation, provided that this prohibition shall not be so construed as to prevent banks and trust companies not located in this state from acting within the state where located as fiscal agent, transfer agent or registrar of municipal or private corporations of this state; provided further, however, that nothing herein shall prevent any Florida corporation not a bank or trust company and not having trust powers from being its own fiscal agent, transfer agent or registrar concerning its own affairs, stock or securities. Provided, however, that nothing in this section or in any other law of this state shall be construed to prohibit a foreign bank or foreign trust company as trustee of any charitable foundation or endowment, em-ployees' pension, retirement or profit-sharing trust, alone or together with a co-trustee from: (a) Contracting in this state or elsewhere with any person to acquire from such person a part or the entire interest in a loan which such person proposes to make, has heretofore made or hereafter makes, together with a like interest in any security instrument covering real or personal property in the state proposed to be given or hereafter or heretofore given to such person to secure or evidence such loan; (b) servicing directly or entering into servicing contracts with persons, and enforcing in this state the obligations heretofore or hereafter acquired by it in the transaction of business outside of this state or in the transaction of any business authorized or permitted hereby; (c) acquiring, holding, leasing, mortgaging, contracting with respect to, or otherwise, protecting, managing, or conveying property in this state which has heretofore or may hereafter be assigned, transferred, mortgaged or conveyed to it as security for, or in whole or in part in satisfaction of, a loan or loans made by it or obligations acquired by it in the transaction of any business authorized or permitted hereby; provided, further, that no such foreign bank or trust company shall be deemed to be transacting business in this state, to be required to qualify so to do, or to be unlawfully exercising powers or duties or acting in an unlawful or prohibited capacity or to be violating any of the provisions of this section or of any other law of this state, solely by reason of the performance of any of the acts or business hereinbefore permitted or authorized hereby; and provided, further, that nothing herein shall be construed as authorizing or permitting any foreign bank or trust company to maintain an office within this state."

The thrust of the complaint is that by preventing plaintiff BT Investment Managers, Inc., a Delaware Corporation,

organized by Bankers Trust New York Corporation, a "bank holding company", a New York Corporation, from providing portfolio investment advice, general economic information and advice and general economic statistical forecasting service and industry studies to persons desiring these services, the statute offends the Commerce and Supremacy clauses of the United States Constitution and deprives plaintiff of liberty and property without due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States. Plaintiffs also complain that the statutes attacked deny to plaintiffs equal protection of the laws of the State of Florida in contravention of the Fourteenth Amendment.

The defendant would persuade this Court that this Three-Judge Court should abstain asserting that abstention would obviate unnecessary friction in the federal system, avoid a decision of a federal constitutional question which may be disposed of on state law principles, avoid needless conflict with the administration by the state of its own affairs and leave to the state the resolution of unsettled questions of state law.

In Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1969) the Supreme Court vacated and remanded a decision of a Three-Judge District Court holding invalid an Act of the Alaska Legislature under both the Federal and Alaskan Constitutions. The Court held that the District Court should have abstained from deciding the case on the merits pending resolution of the state constitutional questions by the state courts. The Supreme Court, through Mr. Justice Douglas, quoted from City of Meridian v. Southern Bell Tel. and Tel. Co., 358 U.S. 639, at page 640, 79 S.Ct. 455, at page 456, 3 L.Ed.2d 562, in which it is stated:

"Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. See Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. That is especially desirable where the questions of state law are enmeshed with federal questions. Spector Motor Co. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101. Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. Cf. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876. In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessary. Railroad Comm'n v. Pullman Co., supra; Spector Motor Co. v. McLaughlin, supra, 323 U.S. 104–105, 65 S.Ct. 154. See Leiter Minerals, Inc. v. United States, 352 U.S. 220, 228–229, 77 S.Ct. 287, 292–293, 1 L. Ed.2d 267."

This case is similar in nature to Reetz v. Bozanich, supra, and City of Meridian v. Southern Bell Tel. and Tel. Co., supra, in that the statutes in question might be asserted to offend both federal and state constitutional provisions.

Additionally, inasmuch as the challenged statutes are regulatory in nature, the state courts of Florida should be given an opportunity to construe the validity of these statutes as a decision by the state courts as to the state constitutional questions may obviate the need to consider their validity under the federal constitution. See Sayers v. Forsyth Building Corporation, 417 F.2d 65 (5th Cir. 1969) where the Court stated:

"The second abstention doctrine recognizes that federal courts should in the interest of comity and to avoid needless conflict defer to the state courts when basic questions of state policy,

such as regulatory legislation, are involved. Burford v. Sun Oil Company, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942); Alabama Public Service Comm. v. Southern Rwy. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951).

Although the plaintiff has attempted to assert only the United States constitutional issue and to concede that the statute covers plaintiffs' contemplated activity, the state legal issues and the factual issue concerning applicability of the Act as it might be interpreted are issues that necessarily should be determined before the ultimate resolution of federal constitutional questions. These issues in the context of a heavily regulated industry are best resolved in the state courts. Under these circumstances this Court should and does abstain from considering an isolated part of complex regulatory machinery on the sole issue of constitutionality where the alleged constitutional impediment is not so obvious or overriding as to make all other litigation a useless exercise.

An appropriate Order shall issue forthwith dismissing this cause without prejudice affording plaintiffs the opportunity to repair to the state courts to litigate the questions of state laws.

RONEY, Circuit Judge, concurs.

ARNOW, Chief District Judge (dissenting):

Under the circumstances here presented, due respect to the plaintiff's choice of a federal forum for resolution of its federal constitutional questions requires that this court not abstain, and for that reason I must respectfully disagree with the majority decision in this case.

The doctrine of abstention originated with Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which established the principle that a federal court should abstain when a state court's construction of a state statute could resolve the federal constitutional question.

Although the doctrine has since been expanded, the heart of the abstention doctrine has always been the availability of state construction of state law which could remove the federal question. While it is true that there is language in Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1969) and City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed. 2d 562 (1959), which indicates a broad approach to the concept of abstention, that concept has never been held proper in a case where state resolution of the question involved would be on the same basis as the federal. *See* Friendly, Federal Jurisdiction: A General View, at 92. Close analysis of the facts in each of the cited cases indicates that the federal issue could have been avoided in *Meridian* by interpretation of the contract under state law and in *Reetz* by a state constitutional provision dealing specifically with fishing.

This case, however, seems directly controlled by Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L. Ed.2d 515 (1971). In that case, the court held abstention improper when a "due process" attack on a state statute could be considered either under the state or federal constitutions. The court further held that since the statute was unambiguous and the underlying basis of each attack was identical, abstention could serve no useful purpose.

This is precisely the situation here. The only apparent state grounds on which the statute herein involved could be attacked is due process. The equal protection clause of the Florida Constitution, due to its limitation to natural persons, would be inapplicable to corporations.[1] Under Georgia Southern

1. Conceivably, the Florida court could construe "natural persons" in its equal protection clause to include corporations. That clause, for a long time, applied only to "men"; it was by amendment in recent years changed to "natural persons." It seems clear the change was made to include women and children, with corporations still excluded.

v. Seven-Up, 175 So.2d 39 (Fla.1965), Florida's due process standards have been equated to the federal standards. Thus the state would essentially be applying federal law.

The majority opinion also implied that, since the challenge is to a provision of a state regulatory scheme, Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1942) would require abstention. The mere fact, however, that a regulatory scheme is being challenged does not automatically warrant abstention. The *Burford* doctrine is largely just a restatement of the basic Pullman concept. The *Burford* type of abstention is required only when the regulatory scheme is such that state court construction of the *entire* scheme could eliminate any constitutional challenge to a particular provision. Cf., Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

The holding of the background case of Sayers v. Forsyth Building Corp., 417 F.2d 65 (5th Cir. 1969), cited in the majority opinion for this type of abstention, appears contrary to the majority's position. The court therein, while discussing the doctrine of abstention, and in so doing including the language cited in the majority opinion, held that in the case there presented, the federal court should not abstain. The reasoning employed in the opinion, to the undersigned, seems consistent with the reasoning employed in this dissenting opinion.

In the instant situation, there is nothing in the broad banking code that might in any way affect the constitutional challenge to this particular part of the regulatory scheme. What the majority appears to be doing is establishing a much broader abstention doctrine than indicated by the *Pullman* or *Burford* line of cases. They would institute a new doctrine that where federal and state issues are involved in the same challenged activity, state issues must first be resolved, even when the challenged statutory provisions are clear and unambiguous on their face, and the state issues are identical to the federal. To do so would cause aggrieved parties unnecessary delay, and could effectively deny them the right to have a federal forum hear their federal claims. The instant case is already old. Resolution of the federal issues here involved might be avoided if plaintiffs, required to resort to the state courts, there prevailed under the state's due process clause or its equal protection clause, if the state court somehow construed "natural persons" in that clause to include corporations. Absent that, however, such resolution is only postponed unnecessarily, and perhaps for several years. For these reasons, I must respectfully dissent.